UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| GARY W. HAYDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:06 CV 16 DDN |
| | ) |
| MICHAEL J. ASTRUE,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM**

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Gary W. Hayden for supplemental security income (SSI) benefits under Title XVI of the Social Security Act (the Act), 42 U.S.C. § 1381, et seq. The parties have consented to the authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**1. Background**

On December 2, 2003, plaintiff applied for disability benefits. He alleges he became disabled on November 13, 2002, at the age of 45, due to back and neck pain. (Tr. 161, 177.)

Following an evidentiary hearing on July 25, 2005, an administrative law judge (ALJ) denied benefits. (Tr. 8-18.) Because the Appeals Council denied review of the ALJ's decision, it became the final decision of the Commissioner for review in this action. (Tr. 3-5.)

**2. General Legal Principles**

The court's role on judicial review is to determine whether the Commissioner's findings are supported by substantial evidence in the

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted as defendant in this suit. 42 U.S.C. § 405(g).

record as a whole. 42 U.S.C. § 405(g); Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). So long as substantial evidence supports that decision, the court may not reverse it merely because substantial evidence exists in the record that would have supported a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least 12 months. See 42 U.S.C. § 1382c(a)(3)(A). A five-step regulatory framework governs the evaluation of disability in general. 20 C.F.R. § 416.920. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Fastner v. Barnhart, 324 F.3d 981, 983-84 (8th Cir. 2003). If the Commissioner finds that a claimant is disabled or not disabled at any step, a decision is made and the next step is not reached. 20 C.F.R. § 416.916(a)(4).

Here, the ALJ determined that plaintiff was unable to perform his past relevant work, but that he did retain the residual functional capacity (RFC) to perform some light work. (Tr. 12, 17.) Therefore, the burden shifts to the Commissioner to show that there is work plaintiff can do in the national economy. Pearsall v. Massanari, 274 F.3d 1211, 1219 (8th Cir. 2001).

### 3. The ALJ's Decision

In a September 9, 2005 decision denying benefits, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of November 19, 2005. The medical evidence established plaintiff had "fairly extensive" degenerative disc

disease, spondylosis[2] of the cervical and lumbosacral spine, and possible early osteoarthritis in the knees. The ALJ found that plaintiff's complaints that his impairments were disabling were not credible, and plaintiff retained the RFC to

> perform the physical exertional and nonexertional requirements of work except for jobs requiring lifting or carrying more than 10 pounds frequently or more than 20 pounds occasionally; standing more than 30 minutes or sitting more than 45 minutes at a time; climbing ropes, ladders or scaffolds or doing any crawling; climbing ramps or stairs or stooping more than occasionally; doing more than limited pushing, pulling, or reaching with the upper extremities, especially overhead; needing more than 80% of normal bilateral grip strength; or being exposed to extreme cold, vibrations, or unprotected heights or dangerous moving machinery.

(Tr. 17.) While this RFC did not permit plaintiff to perform all light work,[3] there were numerous jobs in the national economy that he could perform. (Tr. 16-17.)

The ALJ found that plaintiff was born March 10, 1957, and was right handed. He had completed the eighth grade and part of the ninth grade. He had previously worked as a truck driver, inventory clerk, and chicken

---

[2]Spondylosis is osteoarthritis of the spine, which results in disc deterioration, bony growths, and damage to the joints. Webmd.com/back-pain/tx/Lumbar-Spinal-Stenosis-What-Increases-Your-Risk . (Last visited February 23, 2007.)

[3]Light work is defined as

> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

deboner. He was divorced, lived alone, and received food stamps. (Tr. 12.)

Plaintiff had back surgery in 1990 and had surgery on the cervical spine in 1999. Plaintiff dislocated his clavicle in 2003. The ALJ considered that plaintiff did not have health insurance, and used over-the-counter medications or prescription pain medication he borrowed from friends. He sometimes wore a back brace. (Tr. 12.)

The ALJ considered the medical evidence after his alleged disability onset date,[4] including the opinion of consulting physician B.J. Kerbyson, D.O. The ALJ noted that plaintiff had not received ongoing treatment and had not been hospitalized. He took no pain medication and no doctor opined he was disabled.

The ALJ noted that plaintiff's daily activities were only limited by his choice. He mowed lawns for money as needed. No lay witness corroborated his allegations. He was never denied treatment due to an inability to pay. (Tr. 15-16.)

### 4. Plaintiff's Grounds for Relief

Plaintiff argues that the ALJ erred by 1) failing to properly evaluate the medical evidence when determining his RFC, 2) failing to properly consider his subjective complaints of pain when determining his RFC, and 3) submitting a flawed hypothetical to the vocational expert (VE) because it was based on an erroneous RFC. (Doc. 16.)[5]

---

[4]The ALJ's opinion is silent about the medical evidence that originated before plaintiff's current alleged disability onset date. Plaintiff previously applied for disability benefits. (Doc. 76.) The application was denied in a post-hearing decision on January 24, 2001. (Tr. 140-45.) The ALJ saw no reason to revisit that previous decision denying benefits. (Tr. 12-13.)

[5]Plaintiff argues that the ALJ incorrectly found that he was discharged from the National Guard due to a variocele medical condition, and that the ALJ wrongfully stated he rode to the hearing with his brother, when in fact he rode with a friend. (Doc. 16 at 5.) The ALJ did not err in his opinion about why plaintiff left the military. Plaintiff testified he left the Navy with a medical discharge after four weeks when the Navy learned he had an unsuccessful hernia operation leaving him with a variocele, and that he was later terminated from the National Guard after ten weeks when it was learned he had not finished

-4-

## 5. Discussion

### A. RFC

Plaintiff argues that the ALJ did not properly determine his RFC, because he ignored findings in the reports of both treating physician Robert W. Sparks, D.O.,[6] and consulting physician B.J. Kerbyson, D.O.[7]

The RFC is "the most [a claimant] can still do despite" his or her "physical or mental limitations." 20 C.F.R. § 416.945(a). When determining plaintiff's RFC, the ALJ must consider "all relevant evidence" but ultimately, the determination of the plaintiff's RFC is a medical question. Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). As such, the determination of plaintiff's ability to function in the

---

the ninth grade. (Tr. 274.) A November 2003 medical history indicated that plaintiff stated he was "discharged from the service" due to recurrence of a left inguinal hernia. (Tr. 205.) The ALJ noted that plaintiff served in both the Navy and the National Guard, "before being discharged because of a variocele, a sort of chronic swelling of the scrotal area." (Tr. 12.) The ALJ, in making his finding in the conjunctive, did not factually err in finding that the variocele caused plaintiff's military discharge, as least in part. Further, it does not appear to be of any consequence to the ALJ's decision who plaintiff rode with to the hearing.

[6]On January 11, 2000, Robert W. Sparks, D.O. opined that plaintiff had decreased range of motion in his right shoulder. He noted plaintiff had undergone surgery on his cervical and lumbar spine, and that he had a significantly restricted range of motion in the cervical spine. (Tr. 114-16.)

[7]On February 17, 2004, B.J. Kerbyson, D.O., examined plaintiff as a consulting physician. Plaintiff had pain and tenderness in the paraspinal muscles and the spinous process. He had no evidence of spasm but did have a decreased range of motion. He also had pain and tenderness in his lumbar spine. Dr. Kerbyson thought plaintiff's spine had normal curvature and no evidence of muscle spasm. Dr. Kerbyson noted plaintiff was uncomfortable when sitting or in the supine position. He had diminished sensation to a pin prick test in his hands and left foot. He had diminished grip strength in both hands. Plaintiff had mild to moderate tenderness in his knees and shoulders. He diagnosed plaintiff with chronic low back pain, chronic neck pain, and possible osteoarthritis in the knees. Dr. Kerbyson opined that the heaviest plaintiff could lift was 20 pounds and that he could lift 10 pounds frequently. Dr. Kerbyson opined plaintiff should alternate between sitting and standing to relieve discomfort. He opined that plaintiff's ability to perform work-related activities was at least mildly impaired. (Tr. 216-24.)

workplace must be based on some medical evidence. Id.; see also Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).

When determining the RFC, "[t]he opinions of the claimant's treating physicians are entitled to controlling weight if they are supported by and not inconsistent with the substantial medical evidence in the record." Stormo v. Barnhart, 377 F.3d 801, 805 (8th Cir. 2004). "Such opinions are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data." Id.; Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). "By contrast, '[t]he opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence.'" Singh, 222 F.3d at 452 (quoting Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998)). The ALJ must set forth its reasons for the weight given to a treating physician's assessment. Singh, 222 F.3d at 452.

Although the ALJ was familiar with the earlier claim of plaintiff, he did not expressly discuss the examination report and opinions of Dr. Sparks, which were part of the previous record of plaintiff's previous disability application. (Tr. 140-45.) A reevaluation of Dr. Sparks's opinion and report are barred by administrative res judicata, unless they relate to new and additional evidence of a deteriorating condition relevant to the current application. See Bladow v. Apfel, 205 F.3d 356, 361 n.7 (8th Cir. 2000). This is not the case here, Dr. Sparks's opinion is not inconsistent with the RFC attributed to plaintiff, because the ALJ found that plaintiff was limited in his ability to reach, especially overhead. (Tr. 17.)

The ALJ considered the opinion of consulting physician Dr. Kerbyson. (Tr. 14.) Because he was a consulting physician, the ALJ was not required to give his opinion great weight. Singh, 222 F.3d at 452. However, the ALJ adopted many of his findings when determining plaintiff's RFC. Dr. Kerbyson opined that the heaviest plaintiff could lift was 20 pounds and he could lift 10 pounds frequently, and that he must alternate sitting and standing. His diagnosis of plaintiff was consistent with the ALJ's findings of chronic neck and back pain, and possible osteoarthritis in the knees. (Tr. 223-24.)

There is medical evidence on the record supporting plaintiff's RFC. On February 17, 2004, an x-ray, reviewed by Paul M. Williams, D.O., showed degenerative arthritis in his back. (Tr. 225-26.) Previous medical records, considered by the ALJ in 2001, indicated that the most plaintiff had been restricted to was lifting no more than 25 pounds, and no overhead reaching, but that he could return to work following his cervical surgery. (Tr. 129.) Dr. Kerbyson examined plaintiff and opined that his abilities to bend, stoop, lift, walk, crawl, squat, carry, travel, push and pull were mildly impaired due to his back pain. (Tr. 220.) These reports are consistent with the RFC attributed to plaintiff.

### B. Subjective Complaints

Plaintiff argues that the ALJ's determination of his credibility was not in accord with the factors stated in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). (Doc. 15 at 6.)

"The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians . . . ." Polaski, 739 F.2d at 1322. Factors to be considered include the claimant's daily activities, the duration, frequency, and intensity of the pain, any precipitating factors, whether the claimant has been taking pain medication and the dose, and functional restrictions. Id.; Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003). The ALJ may not discredit subjective complaints based solely on personal observation. Polaski, 739 F.2d at 1322. "Subjective complaints may be discounted if there are inconsistencies in the record as a whole." Singh, 222 F.3d at 452. "An ALJ who rejects such complaints must make an express credibility determination explaining the reasons for discrediting the complaints." Singh, 222 F.3d at 452.

Here, the ALJ considered plaintiff's subjective complaints and found them not credible. (Tr. 16.) He noted that plaintiff's complaints were inconsistent with the medical evidence, that plaintiff had not sought consistent treatment for his pain, that he had no recent surgeries or hospitalizations, that he does not take strong pain

medication, that he had not been referred to specialists for his pain, that his daily activities were restricted by his own choice, that he was able to mow lawns, and that there were no corroborating lay witnesses. (Tr. 15-16.)

Substantial evidence supports the ALJ's conclusion. Plaintiff had not received consistent treatment for his back and neck pain since February 2001, when most doctor visits stopped. He did not return to the doctor for any reason until November 2003, for chest pain. (Tr. 203-07, 215.) After that, the record only shows that he saw Dr. Kerbyson for a consultative exam in February 2004. "[T]he failure to seek medical treatment for such a long time during a claimed period of disability tends to indicate tolerable pain." Bentley v. Shalala, 52 F.3d 784, 786 (8th Cir. 1995). Again, this gap in treatment is substantial evidence supporting the ALJ's decision. "[F]ailure to pursue more aggressive treatment cannot be wholly excused due to [his] claims of financial hardship." Id. Plaintiff testified that he did not seek treatment due to lack of funds (Tr. 249-51), but he did not indicate whether he sought less expensive treatment, nor is there any indication he was ever turned away from treatment due to an inability to pay. See Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992).

His daily activities do not indicate disabling pain. To the extent he limited his daily activities, no medical source indicated he should do so. He was even advised to return to work after his 1999 surgery. (Tr. 129.) See Curran-Kicksey v. Barnhart, 315 F.3d 964, 969 (8th Cir. 2003) (no doctor recommended that plaintiff needed to spend her days lying down). Further, he mowed grass, albeit with a self-propelled mower at his own pace. He is able to dress himself, feed himself, bathe, wash and comb his hair, and tie his shoes with "not a real degree of difficulty." He testified he can stand for 30 minutes and sit for 45 minutes. (Tr. 250-53.)

Plaintiff also did not take prescription pain medication (Tr. 254), which is not consistent with disabling pain. Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996). Taken together, there is substantial evidence on the record supporting the ALJ's decision to find his subjective complaints not credible.

## C. Vocational Expert

"Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." Grissom v. Barnhart, 416 F.3d 834, 837 (8th Cir. 2005) (quoting Tucker v. Barnhart, 363 F.3d 781, 784 (8th Cir. 2004)). "The hypothetical question must include all the claimant's impairments supported by substantial evidence in the record as a whole." However, it does not need to include those impairments that the ALJ does not find credible. Grissom, 416 F.3d at 837; Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).

At the hearing, the ALJ asked the VE to consider a hypothetical individual of plaintiff's age, education, and work experience, and to assume that he could lift 20 pounds occasionally and 10 pounds frequently, and that the person would need to periodically alternate sitting and standing throughout the day, with the maximum sit time no more than 45 minutes, and stand time no more than 30 minutes. The person should do no more than occasional pushing and pulling with the right extremity, and should not climb ladders, ropes or scaffolds, and be limited to occasionally climbing ramps and stairs and only occasionally stooping, and never crawling. The person should not work with his upper extremities above shoulder level, and should avoid concentrated exposure to extreme cold, and avoid even moderate exposure to vibration, and generally should not work around dangerous, unprotected machinery or dangerous, unprotected heights. The person should avoid reaching below waist level, and has about 80 percent of normal grip strength. (Tr. 268-70.)

The VE testified that such a person could perform a cashiering type job, or gate guard. (Tr. 271.) If such a person had to miss two or more days a month of work, or had to lay down at work, there would be no work he could to. (Tr. 272-73.)

Here, this hypothetical question contained the same limitations that the ALJ's RFC determination contains. This court has determined that substantial evidence exists to support this RFC. Therefore, the

VE testimony, that there were jobs such a person could do, is substantial evidence the ALJ may consider.

The final decision of the Commissioner of Social Security is supported by substantial evidence and is affirmed. An order in accordance with this memorandum is filed herewith.

    /S/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 19, 2007.